Filed 11/18/21  In re Grace H. CA2/2

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| In re GRACE H., a Person Coming Under the Juvenile Court Law. | B311037 (Los Angeles County Super. Ct. No. 19CCJP02992B) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, Plaintiff and Respondent, v. BRYAN H., Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Debra R. Archuleta, Judge.  Affirmed.

Suzanne M. Davidson, under appointment by the Court of Appeal, for Defendant and Appellant.

Rodrigo A. Castro-Silva, County Counsel, Kim Nemoy, Assistant County Counsel, and Brian Mahler, Deputy County Counsel, for Plaintiff and Respondent.

\* \* \* \* \* \*

Appellant Bryan H. (father) appeals from the juvenile court's February 11, 2021 order terminating jurisdiction over his daughter Grace H. (born 2018) and granting sole legal and physical custody over Grace to her mother, Yancy R. (mother). We affirm the order.

## BACKGROUND
### Detention and Welfare and Institutions Code section 300 petition

While investigating a related case in March 2019, the Los Angeles County Department of Children and Family Services (the Department) received information concerning possible substance abuse by father. Mother told the Department's social worker that father was Grace's biological father, and that she had separated from him in January 2019. Father went to visit Grace at mother's home on March 21, 2019, and took the child from the home without mother's consent. Father appeared to mother to be under the influence of drugs at the time because his eyes were red and he was sweaty.

Mother disclosed that she had mental and emotional health issues as well. Mother told the social worker that she was currently suffering from postpartum depression and that she had been similarly depressed after giving birth to Grace's older half-

2

sibling, Anthony.[1]  Mother sought treatment for her depression in January 2019 and was prescribed medication.

The social worker spoke by telephone with mother's psychiatrist on March 27, 2019.  The psychiatrist reported that mother was assessed in January 2019 after an attempted suicide.  Mother had purposely overdosed on Tylenol and was placed on a hospital hold for several days.  Mother was referred for weekly therapy, but she had not yet called to schedule a session.  The psychiatrist opined that mother was highly functioning and there were no concerns regarding the children's well-being at this time.

Father met with the social worker on March 27, 2019, and initially denied any substance abuse issues.  He subsequently admitted that he began using methamphetamine in January 2019 and had used methamphetamine the previous week.  Father insisted he was not an addict and said he had only used methamphetamine six times.

Father told the social worker that mother's attempted suicide occurred after she confronted him with another woman.  Father and mother then returned home.  While the children were asleep in the home, mother told father, "watch what I'm going to do."  She then shook a bottle of pills and swallowed a handful of them.  Father observed mother losing consciousness, but he did nothing to help her.  The maternal grandparents arrived at the home shortly thereafter and took mother and the children with them.  Father said that mother had also cut her wrists on the day of her overdose.  He did not see mother do so but observed that her wrists were bleeding.

---

[1]      Anthony is not a subject of this appeal.

Father tested positive for marijuana on March 28, 2019, but negative for all other substances. Mother tested negative for all substances, including alcohol.

Mother contacted the social worker in April 2019 to report that she was commencing therapy and had signed consent forms authorizing the therapist to speak with the Department. Mother also transmitted a note from her psychiatrist stating that mother was compliant with her medication, had no suicidal or homicidal ideations, and was not a risk to the children.

The social worker contacted father on April 8, 2019, and asked him to drug test the following day. Father said he was working and could not do so. The social worker contacted father about drug testing again on April 30, 2019. Father said he was unable to do so because of work, that he was not addicted to methamphetamine, and that he had not used methamphetamine for more than a month.

In a May 5, 2019 interview, mother told the social worker she had previously disclosed father's substance abuse because she was afraid the children would be removed from her. Mother stated that father began using methamphetamine in November or December 2018 and was a frequent user. She said father did not help during her January 2019 attempted suicide because he was "so drugged."

On May 8, 2019, the juvenile court issued a removal order authorizing Grace's removal from father. Both parents were present at the May 14, 2019 detention hearing at which the juvenile court ordered Grace detained from father and released to mother under the Department's supervision. Father was granted monitored visits two times per week for two hours per visit.

4

On June 4, 2019, the Department filed a first amended petition that alleged, under Welfare and Institutions Code[2] section 300, subdivision (b), that father's history of substance abuse and current abuse of methamphetamine and marijuana rendered him incapable of providing regular care and supervision for Grace; that on prior occasions, father was under the influence of drugs while Grace was under his care and supervision; and that father's substance abuse and mother's failure to protect Grace from father placed the child at risk of serious physical harm. The amended petition further alleged that mother's mental and emotional problems, including her attempted suicide by consuming large quantities of Tylenol and cutting her wrists with a kitchen knife, her subsequent involuntary hospitalization, and father's failure to assist mother when he knew of her attempted suicide placed Grace and Anthony at risk of harm.[3]

**Jurisdiction and disposition**

In its June 2019 jurisdiction/disposition report, the Department reported that father had not visited Grace since the child was detained from him. According to mother and the maternal relatives, father had asked several times for unsupervised visits with the child.

Father told the social worker in a May 2019 interview that he began using methamphetamine out of "curiosity." He said he

---

[2]     All further statutory references are to the Welfare and Institutions Code.

[3]     The first amended petition added allegations to the previously filed May 18, 2019 petition that mother's attempted suicide included cutting her wrists with a kitchen knife and that father knew of the attempted suicide but failed to call for assistance.

could not remember when he began using methamphetamine or when he had last used either methamphetamine or marijuana. He minimized his drug use, saying he did not understand the relevance of the Department's investigation because he was not an addict. Father failed to appear for drug testing on May 23, 2019, but tested negative on May 30, 2019. Regarding mother's attempted suicide, father said mother had cut her wrists before she confronted him with another woman. When mother and father returned home that evening, father witnessed mother's pill overdose. When asked why he did not call for help, father responded, "I didn't call because I didn't."

Maternal aunt Yoselin R. told the social worker she had attended high school with father and she had always known father to consume drugs. The maternal grandfather told the social worker that father's drug use was evident because father was irritable and losing weight rapidly. The maternal grandfather had urged father to enroll in a drug rehabilitation program, but father had denied any drug use.

Both parents were present at the June 19, 2019 adjudication hearing. Mother did not contest the allegations of the amended petition. The juvenile court sustained the allegations against father and ordered Grace removed from his custody and placed with mother under the Department's supervision. The court ordered family reunification services for mother and enhancement services for father. Father's case plan included a full drug and alcohol program with aftercare, weekly random drug testing, a 12-step program, and parenting and individual counseling to address case issues. The juvenile court granted father monitored visits and gave the Department discretion to liberalize the visits.

**Review period**

In a December 18, 2019 status review report, the Department noted that Grace and Anthony remained in mother's custody. Mother was taking her prescribed medication but had not yet enrolled in parenting classes or individual counseling.

Father had failed to drug test or to enroll in any court-ordered programs. He visited with Grace on the weekends, and the visits were monitored by a paternal great-aunt.

In June 2020, the Department reported that Grace was healthy and meeting all age-appropriate milestones. Mother was in compliance with her case plan. Mother's psychiatrist had approved discontinuing psychotropic medication.

Father had failed to drug test or to enroll in any court-ordered programs. He told the social worker that he would not complete any programs because they were not important, and his priority was his employment. Father had not visited with Grace since December 2019.

In February 2021, the Department reported that Grace was receiving regional center services because she was not meeting developmental milestones. Father had failed to enroll in any court-ordered programs or to appear for any drug testing. Father had not visited with Grace and had not contacted mother about visits or to inquire about Grace. Father had also failed to keep in touch with the Department. Father did not respond to the Department's e-mails and letters, and his last known telephone number was no longer in service.

**Termination of jurisdiction and custody order**

Both parents attended the February 5, 2021 hearing at which the juvenile court stated its intent to terminate jurisdiction and to issue a custody order granting mother full physical and

legal custody over Grace.  Father's counsel objected to the proposed order and requested joint legal custody.  The juvenile court denied that request.

On February 11, 2021, a custody order was filed terminating dependency jurisdiction and granting mother sole legal and physical custody of Grace.  The order accords father monitored visits a minimum of two times per week for two hours per visit.

This appeal followed.

## DISCUSSION
### I.    Applicable law and standard of review

"When the juvenile court terminates its jurisdiction over a dependent child, section 362.4[4] authorizes it to make custody and visitation orders that will be transferred to an existing family court file and remain in effect until modified or terminated by the superior court."  (*In re Roger S.* (1992) 4 Cal.App.4th 25, 30.)  "When making a custody determination in any dependency case, the court's focus and primary consideration must always be

---

[4]      Section 362.4 states in relevant part:  "If the juvenile court terminates its jurisdiction over a minor who has been adjudged a dependent child of the juvenile court prior to the minor's attainment of the age of 18 years, and . . . an order has been entered with regard to the custody of that minor, the juvenile court on its own motion, may issue . . . an order determining the custody of, or visitation with, the child.  [¶]  . . . Any order issued pursuant to this section shall continue until modified or terminated by a subsequent order of the superior court. . . ."  (§ 362.4, subds. (a), (b).)

the best interests of the child." (*In re Nicholas H.* (2003) 112 Cal.App.4th 251, 268.)

We review a juvenile court's custody order for abuse of discretion. (*Bridget A. v. Superior Court* (2007) 148 Cal.App.4th 285, 300.) Under this standard, a reviewing court may not disturb the custody order "unless the trial court has exceeded the limits of legal discretion by making an arbitrary, capricious, or patently absurd determination." (*In re Stephanie M.* (1994) 7 Cal.4th 295, 318.)

## II.    No abuse of discretion

Father does not challenge the order granting mother sole physical custody of Grace, nor does he challenge the juvenile court's jurisdictional findings. Those findings, the evidence supporting them, and father's conduct throughout the case support the juvenile court's finding that father should not be granted joint legal custody allowing him to make decisions concerning Grace's health, education, and welfare.

Grace was removed from father's custody because of his substance abuse, including methamphetamine and marijuana; being under the influence of drugs while caring for Grace; and failing to protect Grace when he witnessed mother's attempted suicide and did nothing to help mother. Father minimized his drug use, failed to enroll in any court-ordered services, and failed to appear for a single drug test after May 30, 2019. Although father was accorded monitored visits, he attended no visits with Grace throughout 2020 and early 2021. He demonstrated no interest in Grace's welfare and did not call mother or the maternal relatives to inquire about Grace when he failed to visit. In light of father's behavior, the juvenile court reasonably

9

determined that granting father joint legal custody was not in Grace's best interests.

*In re Ma.V.* (2021) 64 Cal.App.5th 11, on which father relies, does not support his position. The court in that case reversed jurisdictional and dispositional orders removing three minor children from the mother's custody for lack of substantial evidence. The juvenile court had assumed jurisdiction and removed the children from the mother's custody based on a history of domestic violence between the mother and a former male companion, the mother's marijuana use, the mother's failure to address a child's mental health issues, and the mother's uncooperative behavior with the social services agency. The appellate court found that all of the conditions that were the basis for dependency jurisdiction had been addressed by the time of the adjudication hearing. (*Id.* at pp. 21-23.) As to the mother's purportedly uncooperative behavior, the appellate court noted that the mother had no obligation to complete a verified case plan because all of her services were voluntary, and that the agency had failed to interview the mother's service providers. (*Id.* at p. 24.)

Here, in contrast, father's case plan was mandatory, not voluntary, and he failed to complete any part of it. Father did not visit with Grace for more than a year and demonstrated no interest in her welfare. The juvenile court did not abuse its discretion by denying father's request for joint legal custody of Grace.

## DISPOSITION

The order granting mother sole legal and physical custody of Grace is affirmed.

_____

CHAVEZ, J.

We concur:

_____

LUI, P. J.

_____

HOFFSTADT, J.